[No. 25413. Department One. April 4, 1935.]

SEATTLE ASSOCIATION OF CREDIT MEN, *Respondent*, v. UNIVERSITY CHEVROLET COMPANY, *Appellant*.[1]

[1]Reported in 43 P. (2d) 46.

*Bogle, Bogle & Gates* and *Warren Brown, Jr.*, for appellant.

*Robbins & Rickles*, for respondent.

MAIN, J. — This action was brought to recover the value of personal property converted. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to recover. Judgment was entered against the defendant in the sum of $375, from which it appeals.

The respondent, the Seattle Association of Credit Men, is a corporation organized under the laws of this state, with its principal place of business in Seattle, Washington. The appellant, the University Chevrolet Company, is a corporation organized under the laws of this state, with a place of business in the same city, where it is engaged in selling automobiles. The Vines Grand Central Public Market Company is a corporation organized under the laws of this state, with its principal place of business, as recited in its articles of incorporation, in the city of Bellingham, in Whatcom county. The Vines corporation was engaged in the business of conducting meat markets in various cities of this state, one of which was in the city of Bremerton.

November 5, 1932, the appellant sold to the Vines corporation a Chevrolet truck, upon a conditional sales contract. Within ten days after taking possession of the truck, the conditional sale contract was filed in the

office of the county auditor of King county. It was not filed in the office of the auditor of Whatcom county. Immediately after the sale, the Vines corporation took the truck into its possession and used the same in and about the business of its Bremerton branch.

June 29, 1933, the Vines corporation made a common law assignment to the respondent for the benefit of its creditors. Pursuant to the terms and provisions of this assignment, the Vines corporation surrendered and delivered to the respondent all of its personal property, including the Chevrolet truck. The respondent immediately took possession of the truck and caused the same to be stored in a garage in Bremerton, subject to its order. While it was so stored, the appellant, through its agents or representatives, took possession thereof, without the knowledge or consent of the respondent, and removed the same to its place of business in Seattle. Subsequently, the respondent made demand upon the appellant for the surrender of the truck, which was refused, and thereafter the appellant sold and disposed of it. The present action, as above stated, was brought to recover the value of the truck.

It is admitted that the conditional sale contract was filed in the wrong county. The principal place of business of the Vines corporation, as recited in its articles of incorporation, being in Bellingham, in Whatcom county, the contract, to be valid as against subsequent creditors, should have been filed in that county. It not having been filed there, the sale was absolute as to such creditors. *First National Bank v. Wilcox,* 72 Wash. 473, 130 Pac. 756, 131 Pac. 203; *Buckner-Weatherby Co. v. Wuest,* 167 Wash. 647, 9 P. (2d) 1104.

Rem. Rev. Stat., § 3790, provides that all conditional sales of personal property shall be absolute as to sub-

sequent creditors unless within ten days after the taking of possession by the vendee a memorandum of the sale, stating its terms and conditions, shall be filed in the county auditor's office of the county wherein at the date of the vendee's taking possession of the property the vendee resided. It will be noted that, under this statute, a conditional sale of personal property "shall be absolute . . . as to subsequent creditors," if it is not filed within the time specified and in the proper county.

The statute making the sale absolute as to subsequent creditors, inquiry will be directed as to whether there were such creditors in the case now before us. The trial court found that the Vines corporation

" . . . did incur liabilities subsequent to said purchase. That it has creditors whose claims arose subsequent to the date of the purchase of said truck, which aggregate a substantial amount, which creditors are represented by plaintiff, as common law assignee."

As supporting this finding, the evidence is that the Vines corporation used the truck in its business in the city of Bremerton for approximately eight months from the time it took the possession thereof until it made the assignment. The secretary and treasurer of the corporation testified that, during this period, it had contracted new debts and incurred further liability in a substantial amount. To the question as to the approximate amount of this indebtedness, the appellant objected, and its objection was sustained.

The original assignment was introduced in evidence, and it contains a written admission that the assignor was unable to meet its obligations as they arose in the ordinary course of business. The appellant did not in any wise refute or contradict this evidence. While the evidence might have been more specific, and probably

would have been had it not been for the objection of the appellant, which was sustained, we, nevertheless, think that the evidence, as it stands in the record, is sufficient at least to make a *prima facie* showing that there were subsequent creditors within the contemplation of the statute. Upon this question, the trial court's finding, to which objection was made, was correct.

There is no evidence in the case as to whether the assets of the corporation, which were transferred to the assignee, were sufficient to pay the claims of the subsequent creditors; but this was not necessary in a case of this character. Under the statute, the conditional sale contract not being filed in the proper county, the sale, as above stated, became absolute as to such creditors. It being absolute when the vendee made the assignment, he transferred the title to the assignee for the benefit of the creditors. The creditors, had the assignment been made direct to them, could have brought an action against the appellant for the conversion of the automobile, because they had title. The creditors having this right, the assignee, as the representative of them, has the same right.

In *Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835, it was held that a consummated assignment creates more than a lien in favor of the creditors who acquire ownership, and at least equitable title. It was there said:

"If, therefore, these creditors, the actual beneficiaries of the assignment, could have acquired a valid title against any inchoate or imperfect lien upon the property by an assignment made directly to them, they can acquire such a right by an assignment made to another for their benefit. It cannot be doubted, we think, that, if the assignment had been made directly to the creditors, and the mortgage the appellant seeks to assert is invalid as against them, they could assert its invalidity in any suit against them brought to enforce the mortgage. If they could do this in their individual

capacities, there is no reason why they cannot do it through their representative. . . . Here the general creditors acquired more than a lien by the assignment. They acquired ownership and title; equitable title it may be, but title nevertheless. Having title through their representative, it is unsound in principle to say that they cannot question liens void as to them, and what is the same thing, question such liens through their representative. The fact that no immediate consideration passed from the assignee to the assignor, or the fact that the obligation which the assignment was intended to satisfy antedated the assignment, does not invalidate or subject the assignment to the lien of the mortgage.''

It is true that what is said in that case was with reference to the chattel mortgage statute. But the two statutes are the same in effect, so far as the question now under consideration is concerned. Rem. Rev. Stat., § 3780 [P. C. § 9747], provides that a mortgage of personal property ''is void as against all creditors of the mortgagor, both existing and subsequent,'' unless it is executed and filed as therein required. The conditional sale statute provides that, if the contract is not filed as therein provided, the sale shall be absolute as to subsequent creditors. In the case of the chattel mortgage which is void, title as to existing and subsequent creditors is in the mortgagor, free from the lien of the mortgage.

By the assignment and delivery of possession to the assignee, the property covered by the contract, in this case the Chevrolet truck, became a part of the assets of the insolvent estate. Title and possession having passed, it was not necessary, as a precedent condition to the right to maintain the action for conversion, to inquire into the question of whether the assets in possession of the assignee were sufficient to meet the claims.

The rule is otherwise when the assignee or receiver

of the bankrupt seeks to set aside what is alleged to be a fraudulent conveyance by the assignor and bring the property covered by that transfer into the estate. There, the action would be against a third person, and the question would be whether the transfer had been made in fraud of creditors. The property would not pass into the insolvent estate until the fraudulent conveyance had been set aside. In cases of that kind, it is necessary to allege and prove that there are not sufficient assets in the hands of the assignee or receiver to satisfy the claims of the creditors of the debtor. The case of *Hibschman v. Bevis,* 103 Wash. 317, 174 Pac. 5, and the other cases cited by the appellant, are cases of this character; but they have no application where the title and possession have passed to the creditors by reason of the assignment.

The judgment will be affirmed.

MILLARD, C. J., TOLMAN, BEALS, and GERAGHTY, JJ., concur.

